## WEST TEXAS UTILITIES CO. et al. v. HENDERSON.

### No. 8124.

Court of Civil Appeals of Texas. Austin.

April 28, 1937.

Rehearing Denied May 19, 1937.

Wright & Tupper, of San Angelo, for appellants.

C. C. Crocker, D. B. Hardeman, and R. G. Hughes, all of San Angelo, for appellee.

McCLENDON, Justice.

This is a boundary suit. Appellee (plaintiff below) owns the record title to the Peter Kendall survey in Tom Green county, for which he sued. Appellants (defendants below) own the record title to the senior surveys Jacob Schmidt No. 643 and Peter Duffy No. 171. Plaintiff's theory is that the Kendall lies between these senior surveys, while defendants contend that the senior surveys adjoin, and that therefore the Kendall was located partly upon the Schmidt and partly upon the Duffy. The trial was to a jury, and at the conclusion of the evidence plaintiff conceded that a 20-

vara strip on the west side of the Kendall was in conflict with the Schmidt, disclaimed as to that strip, and moved for judgment in his favor for the balance of the Kendall. This motion was granted, and judgment was rendered accordingly. Defendants have appealed.

The following map, drawn by surveyor Goodfellow, a witness for defendants, from surveys made and data obtained by him upon the ground, will facilitate a clear understanding of the points in controversy:

The Duffy was surveyed April 10, 1853, by J. G. McDonald, deputy surveyor, Bexar district, with Jose Morales and Jesus Garza as chain carriers. Its beginning call is for its northeast corner on the Concho river at the northwest corner of the D. Damm survey No. 170. "Thence south 3870 varas to a stake and mound; thence west 950 varas to a stake and mound; thence north 3730 varas to a stake on the bank of the river, from which a pecan 24 inches in diameter bears W. 92 varas; thence down the

river with its meanders to the place of beginning." The original field notes were certified as having been examined and found correct by J. S. McDonald, district surveyor, Bexar district, on November 9, 1854.

The J. F. Fusch survey No. 172 was surveyed in the summer of 1856 by J. S. McDonald, then deputy surveyor, Bexar district, with the same chain carriers as those used in the Duffy survey. It calls to begin "at a stake set for the N. W. corner of said survey No. 171, from which a pecan 24 inches in diameter bears W. 92 varas; thence S. 1980 varas to a stake and mound; thence W. 650 varas to a stake on the E. bank of South Fork, from which a pecan 12 inches diameter bears S. 27 varas; thence down S. fork (meanders given) to mouth of South Fork; thence down Main Concho (meanders given) to place of beginning."

The Schmidt was surveyed also in the summer of 1856 by J. S. McDonald, who surveyed the Fusch. It called to begin for its northwest corner at the southwest corner of the Fusch, with the same noted bearings. Thence east with the south line of the Fusch 650 varas to its southeast corner. "Thence South 1750 varas to a stake on the bank of the river from which a pecan 12 inches diameter bears S. 30 W. 912 varas, a hackberry 8 inches diameter bears N. 5 degrees E. 5½ varas. Thence down the river (meanders given) to the place of beginning."

It should be noted here that there is no controversy over the location of the northeast corner of the Fusch, nor of its southwest and Schmidt northwest corners; nor of east lines of those surveys. The controversy involves the west line and corners of the Duffy; defendants contending its west line is coincident with the east line of the Fusch and Schmidt; plaintiff contending that it is 160 varas to the east, leaving the vacancy constituting the east 160 varas of the Kendall as adjudged by the trial court.

The original field notes of the Kendall were not in evidence. The patent, dated February 3, 1887, gives its field notes as follows:

"Beginning at a point in S. line of a survey No. 172 for J. F. Fusch, 650 vrs. E. of its S. W. cor. and being the N. E. cor. of Sur. No. 643 for Jacob Schmidt, a rock md. from which South Twin Mts. brs. N. 66 degrees W., a farm house brs. N. 21½ W.;

"Thence South with S. line of Survey 643 1730 vrs. it being intended that second call shall reduce this line to 1595 vrs. as true length of 1st line; to a stake, the S. cor. of said Sur. No. 643, a Pecan brs. S. 30 degrees W. 9½ vrs. a Hackberry stump, brs. N. 5 degrees E. 5½ vrs. (Mem. The said Pecan shows hacks above a part of a X thus and hacks below, and the Hackberry stump is partly rotted but the bearings are perfect, and there is no other Hackberry stump or tree anywhere near) from this the original S. cor. of 'so Sur. No. 643 the line N. passes along the very edge of the water and at 135 vrs. passes over what is now an island formed by back water from a dam, and on E. bank of Edmund is the N. W. cor. of McNeese Sur. of 446 acres;

"Thence north 135 vrs. to a point on an island 20 vrs. W. of N. W. cor. of said McNeese Sur. a stk.;

"Thence E. 20 vrs. N. W. cor. said McNeese Sur. at 180 vrs. a rk. md. S. W. cor. Sur. No. 171 for Peter Duffy;

"Thence N. 1595 vrs. to a rk. md. for N. E. cor. of this survey in west line of said Sur. No. 171, Peter Duffy;

"Thence W. 180 vrs. to the beginning."

The only witnesses testifying regarding the location of lines and corners having bearing upon the controversy were two surveyors, Mr. Goodfellow and Mr. Simpson, witnesses respectively for defendants and plaintiff. Mr. Goodfellow, a surveyor for 60 years and county or state surveyor for 53 years, was familiar with this vicinity since 1900. He had surveyed some of the lines in 1918 and 1919, and later in 1932. The above map shows the results of his work in this regard. Plaintiff's theory of vacancy between Fusch-Schmidt east line and Duffy west line is predicated upon three circumstances: (1) Mr. Goodfellow's testimony that in 1918 he found a forked cottonwood tree 92 feet east of the Fusch northeast corner, whereas the field notes of the Duffy and Fusch call for a 24-inch pecan at that point; (2) the Duffy southwest corner call is for a stake and mound, whereas that point would be on the bank of the river if on the east line of the Schmidt; (3) to reach the east line of the Schmidt the south line of the Duffy (original call 950 varas) would have to be lengthened some 160 to 175 varas.

Mr. Goodfellow was the only witness testifying concerning the northeast corner of Fusch. His testimony in that regard reads:

"I began with Peter Duffy Survey 171 and at the N. W. corner of Peter Duffy Survey I found a stone set in ground with two small stones set in ground marked N. E.

172, N. W. 171 on the map. At that point there was a forked cotton wood tree nearly 56 inches in diameter at base that bore west 92 varas, and that point was 244 varas east and 56 varas north of the N. W. corner of the Findlater tract fenced on the ground."

His map notation upon this point reads, "Forked C.W. 50" at base brs. W. 92 vs. Tree mkd X."

There does not seem to be any controversy regarding the east and south lines of the Duffy. Mr. Goodfellow's map gives the excess in the south line as 175 varas (1125-950).

It is to be noted that the original distance calls for the Fusch-Schmidt east line (1980+1750=3730) is the same as the original distance call (3730) for the west line of the Duffy. All parties assumed that the Duffy south line is properly located as coincident with the north line of the McNeese (admittedly a junior survey, but there is no evidence of when it was surveyed nor were any field notes introduced). The actual location of the McNeese northwest corner is not disputed. Mr. Goodfellow placed the point of its location due south of the Fusch northeast corner. His map shows a total distance between Fusch's northeast and McNeese's northwest corners of 3730, the exact distance called for in the original field notes. However, according to his survey, there was an excess in the Fusch east line of 100 varas (1517+563=2080) and a shortage of 100 varas (1650) in the Schmidt east line if it terminated at the McNeese northwest corner.

As to the location of the southeast corner of the Schmidt: Mr. Goodfellow placed this corner on the present bank of the river 147 varas due south of the McNeese northwest corner. The field notes of the Kendall placed the southeast corner of the Schmidt 20 varas west and 135 varas south of the McNeese northwest corner. Plaintiff accepted the Goodfellow location of the east line of the Schmidt, and disclaimed as to the consequent 20-vara strip in conflict with the Schmidt. Under either theory, the Schmidt southwest corner is from 135 to 147 varas south of the south line of the Duffy.

The fact that the Duffy southwest corner calls for a stake and mound, and makes no reference to the river, may readily be explained by the fact that in all probability there has been some change in the east bank of the river since 1856. At the present time, it will be noted this point is at the mouth of a slough. If this slough had been there at that time, and emptying into the river at that point, the surveyor would not have proceeded 135 varas or more farther south. Manifestly, the surveyor in 1856 stopped at the first point at which he reached the river. It should also be noted that the field notes of the Schmidt do not call for the southeast corner of the Duffy.

The call of 950 varas for the south line of the Duffy while evidentiary is not conclusive. Excesses in old surveys were of frequent occurrence.

It is equally manifest that the call of a stake and mound for the southwest corner of the Duffy has no real significance as evidence that that corner was not coincident with the McNeese northwest corner.

This leaves the discrepancy regarding the bearing tree for the northwest corner of Duffy as the only evidence upon which a conclusive finding could be based that the now established and conceded northeast corner of the Fusch and the northwest corner of the Duffy are not the same.

The fact that in 1856 J. S. McDonald called to begin at the northwest corner of the Duffy, and called for the same bearing tree, a 24-inch pecan at the same point, 92 varas east, using the same chain carriers that were used 3½ years before by J. G. McDonald, is strong evidence that the later surveyor found the corner and bearing tree which the earlier surveyor had placed and marked. It would be conclusive, if there were no other facts or circumstances in evidence.

In 1856 J. S. McDonald certified he found a marked pecan 24 inches in diameter 92 feet east of where he then placed, and where the evidence now shows he actually placed the northeast corner of the Fusch. Sixty-two years later (1918) Goodfellow testified he found a 50-inch cottonwood at that point. The discrepancy may be explained upon any one of a number of hypotheses other than that the point marked by J. S. McDonald for the Fusch northeast corner is not the same point where J. G. McDonald placed the northwest corner of the Duffy. It is not necessary to enter into a discussion of these various hypotheses. We simply hold that this discrepancy, under the circumstances, is not sufficient to warrant a conclusive finding that there is any vacancy between the Fusch-Schmidt east line and the Duffy west line.

We hold the evidence was not of that conclusive character which would warrant

374

taking the case from the jury and rendering judgment for plaintiff.

Defendants also plead the five, ten, and twenty-five-year statutes of limitation (Vernon's Ann.Civ.St. arts. 5509, 5510, 5519). In view of another trial, we will not discuss the evidence on these issues.

The trial court's judgment is reversed and the cause remanded.

Reversed and remanded.

BAUGH, J., not sitting.